IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOSEPH CLYDE BODWIN, #1880588 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv193 |
| BRIAN COLLIER, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Joseph Clyde Bodwin, a prisoner confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983 against Brian Collier, Coffield Unit Senior Warden Juan M. Garcia, Major Michael O. McNeil, and Lt. John L. Ellis. The complaint was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.

The present Report and Recommendation[1] concerns Defendant John Ellis' motion for summary judgment limited to the exhaustion of administrative remedies (Dkt. #37). Plaintiff filed a response (Dkt. #48). The complaint stems from a use of force that occurred at the Coffield Unit on July 11, 2021. The Court recommends that Defendant Ellis' motion for summary judgment (Dkt. #37) be granted.

---

[1] In a previous Report and Recommendation (Dkt. #26), the Court recommended that the claims against Brian [Bryan] Collier and Coffield Unit Senior Warden Juan M. Garcia, in their official and individual capacities, be dismissed. The Court also recommended that any claim for monetary damages against the Defendants, including Defendants McNeil and Ellis, in their official capacities be dismissed pursuant to the Eleventh Amendment. The district court adopted the Report and Recommendation on January 25, 2023. (Dkt. #31).

1

Plaintiff's Factual Allegations

Plaintiff filed his original complaint on May 17, 2022 (Dkt. #1). He sued Brian Collier, Coffield Unit Senior Warden Juan M. Garcia, Major Michael O. McNeil, and Lt. John L. Ellis. On June 10, 2022, Plaintiff filed his amended complaint. (Dkt. #13). Plaintiff moved to supplement his amended complaint on August 25, 2022. (Dkt. #19). Plaintiff amended his claim for damages from $500,000 to $5 million dollars. (Dkt. #21). The amended complaint is the operative pleading in this case.

In his amended complaint, Plaintiff alleges that while housed at the Coffield Unit, Defendant Ellis used unnecessary and excessive force against him on July 11, 2021, and denied him medical care after the use of force. In his complaint, he claims that on July 11, 2021, he was given permission to leave his cell on X-wing because he was having chest pains. He was sent to the infirmary. En route to the infirmary, Plaintiff continued to suffer chest pains.

As he approached the infirmary, Lt. Ellis confronted Plaintiff and demanded to know what was wrong with him. Plaintiff told Lt. Ellis that he was having chest pains. Lt. Ellis responded: "___ your chest pains!" Plaintiff stated that he moved to the left to get away from Lt. Ellis and move toward the infirmary. Lt. Ellis grabbed him, lifted Plaintiff off his feet and slammed him into the concrete floor. Lt. Ellis detained Plaintiff trying to pull his arm and shoulder out of its socket. Bodwin was then handcuffed by other officers. Lt. Ellis then sucker punched Plaintiff in his mouth, busting his upper lip, saying "I got you _____!" Plaintiff asserts that Defendant Ellis pulled Plaintiff's shoulder out of its socket and injured Plaintiff's hip.

In the infirmary, the nurse wrapped a blood pressure cuff around Plaintiff's arm. Plaintiff admits that he was upset with Lt. Ellis and that he and Lt. Ellis were having a heated argument. Lt.

Ellis told the nurse that the screening process was over and get him ("Plaintiff") out of here. The nurse never turned on the blood pressure machine and Plaintiff never received an examination of his injuries or chest pain. Plaintiff asserts that Defendant Ellis denied him medical care for his chest pain and for his injuries associated with the use of force.

Plaintiff contends that Defendant McNeil had Plaintiff falsely imprisoned in lock up for 53 days in order to cover up for Defendant Ellis' unnecessary and excessive force. He alleges that Defendant McNeil denied him due process regarding the various hearings, including a disciplinary hearing to clear his name, to which he would have been entitled.

Defendant's Motion for Summary Judgment

Defendant Ellis filed a motion for summary judgment limited to the exhaustion of administrative remedies (Dkt. #37). In support of his motion, he submitted:

- Plaintiff's grievance records from July 1, 2021 to December 31, 2021, with a business records affidavit. (Dkt. #37-1).

Defendant argues that the excessive use of force and deliberate indifference medical claims against him should be dismissed because Plaintiff did not exhaust his administrative remedies to completion regarding his claims. Defendant concedes that he is mentioned in some of Plaintiff's grievances; however, Plaintiff did not file consistently the same claims in both Steps of his grievances regarding the July 11, 2021 use of force incident or the denial of medical care claim. *See Whiting v. Lambert*, 2:16-CV-261-Z-BR, 2020 WL 760409, at *7 (N.D. Tex. Jan. 23, 2020), report and recommendation adopted, 2:16-CV-261-Z-BR, 2020 WL 759420 (N.D. Tex. Feb. 14, 2020) (stating that an inmate "must specifically address *each incident complained of in both steps of a grievance process* to have properly exhausted his claims."). Defendant concludes that

Plaintiff's claims against him should be dismissed for failure to exhaust his administrative remedies.

## Plaintiff's Response in Opposition

Plaintiff filed a response in opposition to Defendant Ellis' motion for summary judgment. (Dkt. #48). He argues that summary judgment should not be granted because the grievance office did not respond to his unprocessed grievances. Plaintiff requests that the Court consider his grievances attached to his Original Complaint:

| Grievance Date | Number | Step | Processed | Date Returned | Complaint | Response | Record Page |
|---|---|---|---|---|---|---|---|
| 07/17/21 (3 copies) | 2021140428 | 1 | No, Submission in excess of 1 every 7 days | 07/26/21 | | | Dkt. #1-1 at 1-6 |
| 08/20/21 (3 copies) | Blank | 2 | Unprocessed | No proof of submission | | | Dkt. #1-1 at 7-12 |
| 08/13/21 (3 copies) | 2021150765 | 1 | Yes | 09/17/21 | Locked up for 35 days | Moved to general population on 08/3121 | Dkt. #1-1 at 13-18 |
| 09/25/21 (3 copies) | 2021150765 | 2 | Yes | 12/08/21 | Moving to general population does not solve problems | Placed in PHD because received disciplinary case. Case was dismissed by Warden Garcia. Appropriately housed. | Dkt. #1-1 at 19-24 |

The Court will take Plaintiff's grievances into consideration as his summary judgment evidence.

<u>Standard on Summary Judgment</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party for summary judgment has the burden of proving the lack of a genuine dispute as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48.

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Util., Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant must present evidence sufficient to support a

resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004).

"Because summary judgment is a final adjudication on the merits, courts must employ this device cautiously." *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991) (citation omitted). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

Discussion and Analysis

For a prisoner, the exhaustion of administrative remedies is dictated by 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

A.  Exhaustion under the PLRA

In light of the enactment of the PLRA, the Supreme Court unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). The Court subsequently held that the PLRA requires "proper exhaustion," meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

The Court, moreover, reiterated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216.

Following *Jones*, the Fifth Circuit discussed how the exhaustion question should be handled in *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). The following guidelines were provided:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Id.* at 272-73. More recently, the Fifth Circuit expressly stated that "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (per curiam).

Proper exhaustion is determined by reference to the state grievance procedures. *Jones*, 549 U.S. at 217-18; *Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013). The Texas Department of Criminal Justice ("TDCJ") provides a two-step process for filing grievances, and a prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). A Step 1 grievance must be submitted within fifteen days of the alleged incident. *Id.* If an offender is dissatisfied with the outcome of the Step 1 response, he has fifteen days from the receipt of the Step 1 grievance to file a Step 2 appeal. Both steps of the grievance procedure must be completed for a grievance to be considered exhausted.

7

*Id.* The Supreme Court has clearly specified that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90.

B.     Plaintiff's Grievances

From the official business records of the TDCJ – Correctional Institutions Division, Defendant presents Plaintiff's official grievance records from July 1, 2021 to December 31, 2021. Plaintiff filed five relevant grievances from July 1, 2021 to December 31, 2021.

1. *Unprocessed Grievances*

Grievance Nos. 2021140428[2] and 2021154017 are unprocessed as Plaintiff had submitted more than one grievance in the past seven days and as redundant. Neither of these grievances would count for the purposes of exhausting his administrative remedies. Grievances which are returned unprocessed for procedural violations do not exhaust a prisoner's administrative remedies. A prisoner must not only pursue all available avenues of relief, but he must also comply with all administrative deadlines and procedures rules. *Woodford*, 548 U.S. 90-91. It is the prison's requirements, not the Prison Litigation Reform Act, that define the requirements of exhaustion. *Jones*, 549 U.S. at 218. The Court will not consider the unprocessed grievances, Grievance Nos. 2021140428 and 2021154017, for the purpose of exhaustion. *Kidd v. Livingston*, 463 F. App'x 311, 313 (5th Cir. 2012).

2. *Unexhausted Grievance*

For Grievance No. 2021138407, Plaintiff only filed a Step 1 and did not file a Step 2 grievance. A grievance must be pursued through both steps of TDCJ's grievance system before it

---

[2] Plaintiff's Grievance No. 2021140428 (Dkt. #1-1 at 1–2) is a duplicate of Grievance No. 2021140428 from TDCJ's official grievance records for Plaintiff. (Dkt. #37-1 at 11–12).

can be considered exhausted. *See Johnson,* 385 F.3d at 515. Plaintiff failed to meet the exhaustion requirement for Grievance No. 2021138407. The Court will not consider this grievance for the purpose of exhaustion.

### 3. *Failed to grieve the same issue*

For Grievance Nos. 2021139591 and 2021150765, Plaintiff filed both a Step 1 and a Step 2 for each; however, Plaintiff is required to have complained of the same issue in his Step 2 grievance as he stated in his Step 1 grievance. A prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement. *Johnson*, 385 F.3d at 515; *see also Whiting v. Lambert*, 2:16-CV-261-Z-BR, 2020 WL 760409, at *7 (N.D. Tex. Jan. 23, 2020), report and recommendation adopted, 2:16-CV-261-Z-BR, 2020 WL 759420 (N.D. Tex. Feb. 14, 2020) (stating that an inmate "must specifically address *each incident complained of* in both steps of a grievance process to have properly exhausted his claims.").

#### a. Grievance No. 202113951

Specifically, as to Grievance No. 202113951 (Dkt. #37-1 at 9–10, 17–18), Plaintiff submitted the Step 1 on July 22, 2021. (*Id*. at 10). In the Step 1, Plaintiff stated:

> On 7/19/21 I was refused medical attention by the Coffield Unit Infirmary saying that my multiple injuries resulting from an unnecessary use of force by Lt. Ellis are not urgent. I'm in lots of pain and I need to see a doctor so he can send me to the hospital for X-Rays. Medical is violating my constitutional right by refusing my medical needs.

(*Id.* at 9). Even though Defendant Ellis is mentioned in the Step 1, Plaintiff is not complaining about the use of force or that Defendant denied Plaintiff medical care after the use of force. Instead, Plaintiff is raising issue with the Unit Infirmary regarding his diagnosis and the care he has been prescribed for his injuries. In the "Action Requested to resolve your complaint" portion of the

9

grievance, Plaintiff states he wants to be seen by a doctor and sent to the hospital for X-Rays (*Id*. at 10) which affirms that the grievance pertains to the Unit Infirmary and not Defendant Ellis' actions.

Plaintiff submitted a Step 2 appealing the Step 1 decision on October 16, 2021. (*Id*. at 17–18). In this Step 2, Plaintiff asserts that Defendant Ellis and Bruce Belt denied him medical treatment on July 11, 2021. (*Id*. at 17). Plaintiff did not raise this issue in his Step 1; as such, he did not exhaust the same issue from the Step 1 through the Step 2. Grievance No . 202113951 does not exhaust Plaintiff's claims against Defendant Ellis.

b. Grievance No. 2021150765

Specifically, as to Grievance No. 2021150765[3] (Dkt. #37-1 at 13–14), Plaintiff submitted the Step 1 on August 13, 2021. (*Id*. at 14). In the Step 1, Plaintiff complains that that he has been in Pre-Hearing Detention for 35 days and does not have a disciplinary case pending. (*Id*. at 13). He asserts that he has not received a classification hearing and that the Classification staff are not doing their jobs. (*Id*.). Plaintiff further states that he filed a life endangerment claim against Defendant Ellis because of "an unnecessary Use of Force" and that he was not properly protected from Defendant because Defendant could access Plaintiff's cell. In the Action Requested portion of the grievance, Plaintiff requests that the Classification staff "run me to UCC and ship me off of Coffield [Unit]." The plain language of the Step 1 grievance does not reflect that Plaintiff is complaining about the July 11, 2021 use of force incident or that Defendant denied him access to medical care after the use of force.

---

[3] Plaintiff's Grievance No. 2021150765 (Dkt. #1-1 at 19–24) is a duplicate of Grievance No. 2021150765 from TDCJ's official grievance records for Plaintiff. (Dkt. #37-1 at 13–14, 21–22).

Plaintiff submitted his Step 2 grievance on September 25, 2021. (Dkt. #37-1 at 21–22). He complains that the warden did not properly investigate his grievance and that placing him in general population did not resolve his issues. (*Id*. at 21). Plaintiff does not raise any complaint regarding Defendant Ellis in his Step 2. Grievance No. 2021150765 does not exhaust Plaintiff's claims against Defendant Ellis regarding the use of force incident or the failure to obtain medical care for Plaintiff after the use of force incident. A grievance must be pursued through both steps of the TDCJ system before it can be considered exhausted. *See Johnson,* 385 F.3d at 515. Plaintiff failed to meet the exhaustion requirement for Grievance No. 2021150765.

Prisoners are required to exhaust claims through the prison's grievance system *before* filing suit in court. *Jones*, 549 U.S. at 203; G*onzalez*, 702 F.3d at 788. Taking the evidence in the light most favorable to Plaintiff, he failed to exhaust to completion any grievance against Defendant Ellis regarding the July 11, 2021 use of force incident or the denial of medical care after the use of force incident. Consequently, Plaintiff's claims against Defendant Ellis must be dismissed for Plaintiff's failure to exhaust his administrative remedies.

## Recommendation

It is therefore recommended that the Defendant Ellis' motion for summary judgment limited to the exhaustion of administrative remedies (Dkt. #37) be granted. It is further recommended that Plaintiff's claims against Defendant Ellis be dismissed without prejudice for failure to exhaust administrative remedies.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d at 1430 (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 16th day of February, 2024.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE