IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOSEPH CLYDE BODWIN, #1880588 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv193 |
| BRIAN COLLIER, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Joseph Clyde Bodwin, an inmate confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, brings the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. He is suing Brian Collier, Coffield Unit Senior Warden Juan M. Garcia, Major Michael O. McNeil, and Lt. John L. Ellis. The cause of action was referred for findings of fact, conclusions of law, and recommendations for the disposition of the lawsuit.

The present Report and Recommendation[1] concerns Defendant Michael O. McNeil's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. #38) and Plaintiff's response (Dkt. #48). For reasons hereinafter explained, the motion should be granted.

---

[1] In a previous Report and Recommendation (Dkt. #26), the Court recommended that the claims against Brian [Bryan] Collier and Coffield Unit Senior Warden Juan M. Garcia, in their official and individual capacities, be dismissed. The Court also recommended that any claim for monetary damages against the Defendants, including Defendants McNeil and Ellis, in their official capacities be dismissed pursuant to the Eleventh Amendment. The district court adopted the Report and Recommendation on January 25, 2023. (Dkt. #31).

Facts of the Case

Plaintiff filed his original complaint on May 17, 2022 (Dkt. #1). He sued Brian Collier, Coffield Unit Senior Warden Juan M. Garcia, Major Michael O. McNeil, and Lt. John L. Ellis. On June 10, 2022, Plaintiff filed his amended complaint. (Dkt. #13). Plaintiff moved to supplement his amended complaint on August 25, 2022. (Dkt. #19). Plaintiff amended his claim for damages from $500,000 to $5 million dollars. (Dkt. #21). The amended complaint is the operative pleading in this case.

In his amended complaint, Plaintiff alleges that while housed at the Coffield Unit, Defendant Ellis used unnecessary and excessive force against him on July 11, 2021, and denied him medical care after the use of force. In his complaint, he claims that on July 11, 2021, he was given permission to leave his cell on X-wing because he was having chest pains. He was sent to the infirmary. En route to the infirmary, Plaintiff continued to suffer chest pains.

As he approached the infirmary, Lt. Ellis confronted Plaintiff and demanded to know what was wrong with him. Plaintiff told Lt. Ellis that he was having chest pains. Lt. Ellis responded: "___ your chest pains!" Plaintiff stated that he moved to the left to get away from Lt. Ellis and move toward the infirmary. Lt. Ellis grabbed him, lifted Plaintiff off his feet and slammed him into the concrete floor. Lt. Ellis detained Plaintiff trying to pull his arm and shoulder out of its socket. Bodwin was then handcuffed by other officers. Lt. Ellis then sucker punched Plaintiff in his mouth, busting his upper lip, saying "I got you _____!" Plaintiff asserts that Defendant Ellis pulled Plaintiff's shoulder out of its socket and injured Plaintiff's hip.

In the infirmary, the nurse wrapped a blood pressure cuff around Plaintiff's arm. Plaintiff admits that he was upset with Lt. Ellis and that he and Lt. Ellis were having a heated argument. Lt.

Ellis told the nurse that the screening process was over and get him ("Plaintiff") out of here. The nurse never turned on the blood pressure machine and Plaintiff never received an examination of his injuries or chest pain. Plaintiff asserts that Defendant Ellis denied him medical care for his chest pain and for his injuries associated with the use of force.

Plaintiff contends that Defendant McNeil had Plaintiff falsely imprisoned in lock up for 53 days in order to cover up for Defendant Ellis' unnecessary and excessive force. He alleges that Defendant McNeil denied him due process regarding the various hearings, including a disciplinary hearing to clear his name, to which he would have been entitled.

## Motion for Judgment on the Pleadings

Defendant McNeil filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. #38). Defendant argues that he is entitled to have the claims against him in his individual capacity dismissed because Plaintiff has not pled facts that establish that a violation of his constitutional right have occurred. Defendant's arguments will be fully examined in the Discussion and Analysis section of this Report and Recommendation.

## Plaintiff's Response

Plaintiff filed a response (Dkt. #48) to Defendant McNeil's Rule 12(c) motion. His arguments in response will be fully examined in the Discussion and Analysis section of this Report and Recommendation.

After reviewing the operative complaint, the motion for judgment on the pleadings, and the response, Defendant's Rule 12(c) motion should be granted.

Rule 12(c) standard

Defendant McNeil brings his motion under Federal Rule of Civil Procedure 12(c). Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter &Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Adams v. City of Harahan*, 65 F.4th 267, 271 (5th Cir. 2023); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). In examining a motion for judgment on the pleadings, a court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A claim will survive if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563 n.8.

Although detailed factual allegations are not required, a plaintiff must provide the grounds of his entitlement to relief beyond mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level" and into the "realm of

plausible liability." *Id.* at 555, 557 n.5. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to have facial plausibility, a plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Therefore, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotations omitted). Dismissal is appropriate only "if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002).

## Discussion and Analysis

Defendant McNeil asserts that even taking Plaintiff's allegations as true, Plaintiff has failed to plead a claim that rises to the level of a constitutional violation against him. Plaintiff alleges that Defendant McNeil had Plaintiff held in pre-hearing detention or administrative segregation without the benefit of a disciplinary hearing or sustained disciplinary charge against him. Defendant argues that placement in pre-hearing detention without a hearing is not a violation of Plaintiff's constitutional rights. In his response in opposition (Dkt. #48), Plaintiff contends that Defendant's motion should be denied as Defendant did not attach any evidence to the motion showing that Defendant is not at fault.

A.  *No due process right triggered under the Fourteenth Amendment*

Plaintiff asserts that his 53-day placement in pre-hearing detention or administrative segregation, without a disciplinary hearing, violated his due process rights. He does not have a

liberty interest that is violated by his placement in pre-hearing detention or administrative segregation. *Tamez v. Buentello*, 80 F. App'x 933, 934 (5th Cir. 2003) (citing *Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir. 1996)); *Lukin v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995). To maintain his due process challenge, Plaintiff must establish that his transfer to pre-hearing detention or administrative segregation deprived him of a liberty interest protected by the Fourteenth Amendment. *Meachum v. Fano,* 427 U.S. 215, 223 (1976). Generally speaking, due process protections attach only to those punishments that impose an atypical and significant hardship in relation to ordinary incidents of prison life, or to those that extend the length or duration of confinement. *Sandin v. Conner,* 515 U.S. 472, 484–86 (1995). Indeed, a prisoner has no liberty interest in his custodial classification. *Wilkerson Stalder,* 329 F.3d 431, 435–36 (5th Cir. 2003); *see* also *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.").

In the wake of *Sandin*, federal courts have repeatedly found that placement in administrative segregation, without more, **does not** constitute a deprivation of a constitutionally cognizable liberty interest. *See, e.g., Bonner v. Alford*, 594 F. App'x 266, 267 (5th Cir. 2015) (Mem.); *Pichardo*, 73 F.3d at 613; *Luken*, 71 F.3d at 193 ("*Sandin* establishes that Luken's administrative segregation, without more, does not constitute a deprivation of a constitutionally protected liberty interest."); *Al-Amin v. Donald*, 165 F. App'x 733, 738 (11th Cir. 2006) ("Confinement in administrative segregation, under conditions substantially similar to those experienced by the general population of the prison, does not implicate liberty interests...")

Here, Plaintiff's continued placement in pre-hearing detention or administrative segregation for 53-days—regardless of whether his classification is correct or the presence of a

sustained disciplinary finding—is not a protected liberty interest. Placement in administrative segregation is an incident to ordinary life as a prisoner, and Plaintiff fails to allege or even demonstrate that his placement constitutes an atypical significant deprivation of his rights when considering the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484; *see also Dickerson v. Cain*, 241 F. App'x 193, 2007 WL 2033280 at *1 (5th Cir. 2007) ("Dickerson has not shown that his placement in Camp J extended lockdown presented an atypical or significant hardship beyond the ordinary incidents of prison life."). Plaintiff has failed to state a claim upon which relief can be granted under the Fourteenth Amendment.

      B.  *No constitutional violation triggered under the Eighth Amendment*

Plaintiff, furthermore, is mistaken in his belief that being housed in segregation for 53-days without a disciplinary hearing automatically constitutes cruel and unusual punishment. The Fifth Circuit has held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be grounds for a constitutional claim." *Hernandez v. Velasquez,* 522 F.3d 556, 562 (5th Cir. 2008). The Supreme Court has noted that placement in solitary confinement for an *indeterminate* amount of time may amount to cruel and unusual punishment. *See Hutto v. Finney,* 437 U.S. 678, 686 (1978) (explaining that while an indeterminate time in solitary confinement may be unconstitutional, a determinate time where the conditions are not materially different from those affecting other prisoners are within the authority of the prison administrator and not cruel or unusual).

Cases where segregated confinement is sufficiently atypical to implicate a due process liberty interest involve circumstances much harsher than those presented here. In *Wilkerson v. Stalder,* the Fifth Circuit held that due process *might* have been violated where the plaintiff had

been kept on lockdown status for thirty years. *Wilkerson v. Stalder,* 329 F.3d at 436 (remanding for determination whether such confinement was "atypical" under *Sandin*). Plaintiff's temporary assignment to pre-hearing detention or administrative segregation for 53-days is not the equivalent of the thirty years in administrative segregation like the plaintiff in the *Wilkerson* case.

In another case, the Supreme Court held that transfer to the Ohio "Supermax" facility implicated a liberty interest, in part because the conditions there were "more restrictive than any other form of incarceration in Ohio." *Wilkinson v. Austin,* 545 U.S. at 221. The *Wilkinson* Court noted that at the Supermax facility, "almost all human contact is prohibited." *Id.* at 223. Ohio Supermax prisoners are kept in single cells with solid metal doors that prevent communication from one cell to another; prisoners take all their meals alone in their cells rather than a common area; and "opportunities for visitation are rare" and are conducted through glass walls. *Id.* at 223–24. Ohio Supermax inmates spend 23 hours a day alone in their cells, where a light remains on at all times. *Id.* at 224. Moreover, confinement at the Supermax facility is indefinite, and otherwise eligible inmates are disqualified for parole consideration. *Id.* These conditions and others were sufficiently extraordinary that the Supreme Court concluded prisoners had a liberty interest in avoiding assignment to the Supermax facility. *Id.*

The thirty-year confinement in *Wilkerson v. Stadler* and the extreme conditions in *Wilkinson v. Austin* are distinguishable from the present facts. Plaintiff has not shown that the conditions in the Coffield Unit's pre-hearing detention or administrative segregation pose a significant or atypical hardship. He has not stated a claim under the Eighth Amendment.

Recommendation

It is recommended that Defendant McNeil's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. #38) be granted. It is recommended that Plaintiff's claims against Defendant McNeil be denied with prejudice.

Within fourteen (14) days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 20th day of February, 2024.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE